USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 6/11/19

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v.

NURIS MARTE LOPEZ,

Defendant.

No. 18 Cr. 370 (RA)

OPINION & ORDER

RONNIE ABRAMS, United States District Judge:

Defendant Nuris Marte Lopez is charged with illegally reentering the United States under 8 U.S.C. §§ 1326(a) and (b)(2). Before the Court is her motion to dismiss the indictment pursuant to Rule 12(b)(2) of the Federal Rules of Criminal Procedure and 8 U.S.C. § 1326(d). For the reasons that follow, the motion is denied.

## BACKGROUND

Lopez is a citizen of the Dominican Republic. In March 2001, she was convicted of one count of knowingly and intentionally conspiring to distribute and possess with intent to distribute heroin, in violation of 21 U.S.C. § 846, in the United States District Court for the Eastern District of New York. *See United States v. Nuris Lopez*, 99 Cr. 1113 (E.D.N.Y.), Dkts. 2, 12, 43. Lopez was sentenced to twenty-four months of imprisonment, to be followed by three years of supervised release.

In August 2002, while Lopez was serving her sentence, the Immigration and Naturalization Service served her with a notice to appear. The notice alleged that Lopez was subject to removal from the United States, pursuant to Section 237(a)(2)(B)(i) of the Immigration and Nationality Act, because she had been convicted of a violation of law "relating to a controlled substance (as

defined in Section 102 of the Controlled Substances Act, 21 U.S.C. [§] 802." Notice to Appear, Wolf Decl., Ex. 1 (Dkt. 11-2).

On October 17, 2002, while still incarcerated, Lopez's removal proceedings commenced. The presiding immigration judge ("IJ"), Judge Michael Strauss, instructed Lopez that the purpose of the hearing was to decide whether she should be deported from the United States, and that she had the right to be represented by an attorney at her own expense. Def's Mem. Ex. E, at 1 (Dkt. 9-1). The IJ then asked whether Lopez "want[ed] some time to get a lawyer," to which Lopez responded she did "want time," and the IJ adjourned the hearing accordingly. *Id.*

On December 12, 2002, at the continuation of Lopez's hearing, the IJ explained to Lopez that he had "set [her] case over to get a lawyer" and asked whether she had "found a lawyer." *Id.* Lopez responded: "No, I did not ask for one because everyone which I consulted with said or, that all of that would depend upon the judge—you don't have any possibilities." *Id.* The hearing continued, and Lopez admitted that she was "convicted on April 4, 2001 . . . for conspiring to possess and distribute heroin." *Id.* The IJ then informed Lopez that if she returned "to the United States without the special permission of the immigration service . . . it's a felony." *Id.*

On April 5, 2017, Lopez was arrested in the Bronx, New York, for criminal possession of a controlled substance in the first degree, in violation of New York Penal Law § 220.21(1). Based in part on matching fingerprint impressions taken from Lopez in 2002 and 2017, Magistrate Judge Cott authorized a complaint charging Lopez with one count of illegally reentering the country "after having been removed from the United States subsequent to a conviction for the commission of an aggravated felony." Compl. ¶¶ 1, 3–4.

On May 23, 2018, a grand jury indicted Lopez on the same charge of illegal entry alleged in the complaint. On February 28, 2019, Lopez filed the instant motion to dismiss.

## LEGAL STANDARDS

An alien who has been removed from the United States, subsequent to a conviction for commission of an aggravated felony, and who returns to the United States unlawfully, faces potential criminal penalties of up to 20 years' imprisonment, a fine, or both. *See* 8 U.S.C. §§ 1326 (a), (b)(2). A defendant may move to dismiss an indictment containing such an illegal reentry charge by attacking the validity of the underlying deportation order "because illegal re-entry requires a lawful prior deportation." *United States v. Fernandez-Antonia*, No. 99 CR. 1175 (NRB), 2000 WL 1716436, at *4 (S.D.N.Y. Nov. 15, 2000), *aff'd*, 278 F.3d 150 (2d Cir. 2002).

Specifically, Section 8 U.S.C. § 1326(d) allows a defendant charged with illegal reentry to collaterally attack the deportation order that provides the basis for his or her reentry charge in a subsequent criminal proceeding if the defendant can establish that:

(1) [she] exhausted any administrative remedies that may have been available to seek relief against the order;

(2) the deportation proceedings at which the order was issued improperly deprived the [defendant] of the opportunity for judicial review; and

(3) the entry of the order was fundamentally unfair.

8 U.S.C. § 1326(d). "[F]ailure to establish any one [of these elements] forecloses collateral attack and dismissal of the indictment on the basis of the invalidity of the underlying deportation order." *United States v. Sammy*, 186 F. Supp. 3d 241, 244 (E.D.N.Y. 2016) (citing *Fernandez-Antonia*, 278 F.3d at 150). The parties focus primarily on the third prong, which is dispositive of Lopez's motion here. To establish that the entry of the removal order was fundamentally unfair under 8 U.S.C. § 1326(d)(3), the defendant must show "both a fundamental procedural error and prejudice resulting from that error." *United States v. Perez*, 330 F.3d 97, 104 (2d Cir. 2003).

**DISCUSSION**

Lopez asserts three arguments in support of her position that the entry of her removal order was fundamentally unfair: (1) the IJ lacked jurisdiction to enter an order of removal against Lopez because the "notice to appear" that was served upon her did not specify the date and time when the removal hearing would occur;[1] (2) the IJ violated her due process rights by failing to advise her of her purported eligibility for voluntary departure relief; and (3) the IJ failed to determine whether she had a made knowing and intelligent waiver of her right to be represented by counsel at her removal hearing. These arguments fail.

**I. The IJ's Jurisdiction**

First, Lopez argues that the IJ lacked jurisdiction to order her removal, rendering the removal order fundamentally unfair, because the notice to appear for the removal proceeding that was served on her did not specify a date and time when the hearing would occur.

Lopez principally relies on the Supreme Court's decision in *Pereira v. Sessions*, 138 S. Ct. 2105, 2110 (2018), in support of her argument that the absence of a date and time on her notice to appear prevented the IJ from having subject matter jurisdiction over her removal proceeding. *Pereira* held that a notice to appear that lacks a date and time does not trigger the "stop-time rule" used for determining whether a noncitizen has been continuously present in the United States long enough to be eligible for cancellation of removal. *See id.*; 8 U.S.C. § 1229(b). The stop-time rule at issue in *Pereira* provides that "any period of . . . continuous physical presence" is "deemed to end . . . when the alien is served a notice to appear under section 1229(a)." 8 U.S.C. § 1229b(d)(1). Because Section 1229(a) defines a notice to appear to include "[t]he time and place at which the

---

[1] Lopez also maintains that if the IJ lacked jurisdiction over her removal proceeding then she need not satisfy the requirements of 8 U.S.C. § 1326(d), because she would never have been "removed" in the first place, as required to commit the offense of illegal reentry, *see* 8 U.S.C. § 1326(a). The Court does not address this argument because it concludes, for the reasons set forth below, that the IJ did have jurisdiction to order Lopez's removal.

[removal] proceedings will be held[,]" the Supreme Court held that, "based on the plain text of the statute . . . to trigger the stop-time rule, the Government must serve a notice to appear that, at the very least, 'specif[ies]' the 'time and place' of the removal proceedings." *Pereira*, 138 S. Ct. at 2115 (quoting 8 U.S.C. § 1229(a)(1)(G)(i)) (alterations in original). Absent a time and place to indicate when and where the removal proceeding will commence, the Court reasoned, a notice to appear is "depriv[ed] . . . of its essential character," and is not a "notice to appear *under section 1229(a)*," as specified in the statute setting forth the stop-time rule, 8 U.S.C. § 1229b(d)(1) (emphasis added). *Id.* at 2116–17.

Lopez contends that the "stop-time rule" is only one of the contexts in which, consistent with *Pereira*, the failure to include a date and time disqualifies a notice to appear as such. As an initial matter, she maintains that "Section 1229(a)(1)(G)(i) defines a 'notice to appear'—not just for purposes of the stop-time rule—but for purposes of *all* removal proceedings." Def's Mem. at 7 (Dkt. 9). Since the filing of her motion, however, the Second Circuit has held—consistent with the Ninth and Sixth Circuit Courts of Appeals—that, in the context of the regulations governing an IJ's jurisdiction over a removal proceeding, *see* 8 C.F.R. §§ 1003.13–18, a notice to appear is not defined under 8 U.S.C. § 1229, and does not require a date and time in order to confer jurisdiction on an IJ to commence a removal proceeding. *See Banegas Gomez v. Barr*, 922 F.3d 101, 111 (2d Cir. 2019); *Karingithi v. Whitaker*, 913 F.3d 1158, 1161 (9th Cir. 2019); *Hernandez-Perez v. Whitaker*, 911 F.3d 305, 314–15 (6th Cir. 2018).

With respect to an IJ's jurisdiction over removal proceedings, Section 8 C.F.R. 1003.14(a) provides that "[j]urisdiction vests, and proceedings before an Immigration Judge commence, when a charging document is filed with the Immigration Court[.]" Section 8 C.F.R. 1003.13 defines a "[c]harging document" to include a "[n]otice to [a]ppear." Section 8 C.F.R. 1003.15(b) then

5

specifies the required contents of a notice to appear, which include, among other things, "[t]he nature of the proceedings," "[t]he acts or conduct alleged to be in violation of law," and "[n]otice that the alien may be represented, at no cost to the government, by counsel or other representative." Critically, unlike in 8 U.S.C. § 1229(a)(1), date and time are *not* listed as among the required contents of a notice to appear as defined by 8 C.F.R. § 1003.15(b). As the *Banegas Gomez* court noted, "[t]he agency regulations do not refer to § 1229(a)(1)'s requirements when defining what a[] [notice to appear] is for purposes of vesting jurisdiction in the Immigration Court." *Banegas Gomez*, 922 F.3d at 111. For this reason, and the additional reasons provided in *Banegas Gomez*, the absence of a date and time on Lopez's notice to appear did not divest the IJ of jurisdiction over her removal hearing, and Lopez's removal order cannot be deemed fundamentally unfair on that basis.[2]

## II. Voluntary Departure

Next, Lopez argues that her removal proceeding was fundamentally unfair because the IJ failed to inform her of her purported eligibility to seek voluntary departure, pursuant to 8 U.S.C. § 1229c(a). The Court agrees with the Government that this argument is foreclosed by Lopez's prior conviction for an aggravated felony.

The Second Circuit has not decided whether an IJ's failure to inform an alien about her right to seek voluntary departure can render a deportation order fundamentally unfair. In *United States v. Copeland*, however, the Circuit held that an IJ's failure to inform an alien about the possibility of another type of discretionary relief—formerly known as waiver of deportation and

---

[2] The *Banegas Gomez* Court specified that "an NTA that omits information regarding the time and date of the initial removal hearing is nevertheless adequate to vest jurisdiction in the Immigration Court, at least so long as a notice of hearing specifying this information is later sent to the alien." *Id.* at 112. Here, the parties do not reference any hearing notice apart from the initial notice to appear. Nevertheless, Lopez appeared at two hearings in front of the IJ and Lopez does not assert that she received inadequate notice of those hearings.

6

since replaced by cancellation of removal, *see* 8 U.S.C. § 1229(b)—"may be fundamentally unfair . . . if prejudicial." 376 F.3d 61, 71 (2d Cir. 2004). Courts in this district have since held that *Copeland*'s reasoning also applies in the context of voluntary departure. *See United States. v. Gonzalez*, No. 15-CR-0021 (JMF), 2015 WL 3443942, at *1 (S.D.N.Y. May 29, 2015) (finding that "the failure to inform an alien about the right to seek voluntary departure does indeed qualify as fundamental error if the alien shows that [s]he was prejudiced by the error"); *United States. v. Garcia*, No. 08 CR 32(ARR), 2008 WL 3890167, at *7 (E.D.N.Y. Aug. 19, 2008) ("Virtually all the considerations that the *Copeland* court relied upon . . . also support the conclusion that deprivation of voluntary departure rights under § 1229c may constitute a fundamental error.").

Even assuming that the rationale articulated in *Copeland* applies here, Lopez's argument still lacks merit because the IJ's failure to inform her about voluntary departure relief could not have prejudiced her. As Lopez acknowledges, a person who is not a U.S. citizen or national, and has been convicted of an aggravated felony, is ineligible for voluntary departure under 8 U.S.C. § 1229c(a). Section 8 U.S.C. 1229c(a) provides that "[t]he Attorney General may permit an alien voluntarily to depart the United States at the alien's own expense under this subsection . . . if the alien is not deportable under section 1227(a)(2)(A)(iii) . . . of this title." Section 8 U.S.C. 1227(a)(2)(A)(iii) in turn provides that "[a]ny alien who is convicted of an aggravated felony at any time after admission is deportable." The regulation governing restrictions on the availability of voluntary departure incorporates the definition of aggravated felony in 8 U.S.C. § 1101(a)(43). *See* 8 C.F.R. § 1240.26(b)(1)(i)(E) (authorizing an IJ to grant voluntary departure only where the alien "[h]as not been convicted of a crime described in [8 U.S.C. 1101(a)(43)]"). Section 8 U.S.C. 1101(a)(43)(B) defines aggravated felony to include "illicit trafficking in a controlled substance . . . including a drug trafficking crime (as defined in section 924(c) of Title 18)." Section 924(c)(2)

7

further defines a drug trafficking crime as "any felony punishable under the Controlled Substance Act (21 U.S.C. 801 et seq.)." Prior to her deportation hearing, Lopez had been charged, and convicted, under 21 U.S.C. § 846 for knowingly and intentionally conspiring to possess and distribute heroin. *See* Def's Mem. Exs. A, G. Because conspiring to possess and distribute heroin is a felony punishable under the Controlled Substances Act, it is an aggravated felony under 8 U.S.C. § 1101(a)(43) that precludes an IJ from awarding voluntary departure relief.

Lopez's argument that the discovery produced by the Government does not establish that she was convicted of an aggravated felony prior to her deportation hearing is unavailing. First, Lopez asserts, without citing any legal authority, that "certified copies of the guilty plea and sentencing transcripts" are needed in order "to confirm whether the crime for which Mr. Lopez was convicted was an aggravated felony." Def's Mem. at 18. But Lopez has attached to her motion the judgment memorializing her guilt for conspiring to possess and distribute heroin pursuant to 21 U.S.C. § 846. *See* Def's Mem. Ex. G. That judgment was also before the IJ who presided over her deportation proceeding and 8 U.S.C. § 1229(c)(3)(B)(i) explicitly provides that "[a]n official record of judgment and conviction" "shall constitute proof of a criminal conviction." In addition, Lopez admitted at her removal proceeding that she had been previously convicted of conspiring to possess and distribute heroin. Def's Mem. Ex. E at 2. And although the Court has not obtained a copy of the plea transcript, based upon its review of the April 4, 2001 sentencing transcript, it is not persuaded that Lopez's judgment of conviction means something other than what it says.

Second, Lopez asserts that she could not have been convicted of "illicit trafficking in a controlled substance" because the charge pursuant to 21 U.S.C. §§ 846 and 841(b)(1)(B)(i) with which she was indicted carries a mandatory minimum of 5 years of imprisonment and Lopez was

8

sentenced to 24 months imprisonment with 3 years of supervised release. Def's Mem. at 18 n.2. But the transcript of her April 4, 2001 sentencing proceeding establishes that Lopez qualified for the so-called safety valve, *see* 18 U.S.C. § 3553(f) (1996), which allowed Judge Block to impose a sentence "without regard to any statutory minimum sentence." *Id.*; Apr. 4, 2001 Tr. at 3 (Dkt. 18). As such, even though the duration of Lopez's sentence was below the mandatory minimum for a § 841(b)(1)(B)(i) offense, that in no way necessitates the conclusion that she could not have been convicted of "illicit trafficking in a controlled substance." In any event, as noted above, the judgment makes clear that she was convicted of 21 U.S.C. § 846—whether a mandatory sentence applied or not. The Court thus finds for the purposes of this motion that Lopez had, prior to her removal proceeding, been convicted of a "felony punishable under the Controlled Substance Act," 18 U.S.C. § 924(c)(2), which is an aggravated felony, *see* 8 U.S.C. § 1101(a)(43)(B), that precluded her from being eligible for voluntary departure. *See* 8 C.F.R. § 1240.26(b)(1)(i)(E); 8 U.S.C. §§ 1227(a)(2)(A)(iii), 1229c(a). Accordingly, Lopez cannot establish that the IJ's failure to inform her about voluntary departure was error that rendered her removal order fundamentally unfair under 8 U.S.C. § 1326(d)(3)—given that she could never have obtained such relief. *See Fernandez-Antonia*, 278 F.3d at 160 (2d Cir. 2002) (failure of IJ to inform defendant about voluntary departure could not serve as basis for collateral attack where defendant could not "make even a plausible showing that he might have been granted discretionary relief").

### III. Waiver of Representation by Counsel

Finally, Lopez argues that the IJ "did not comply with the law or with the applicable regulations concerning waivers of counsel." Def's Mem. at 14. Although Lopez is correct that the IJ was not in full compliance with the regulations governing advice regarding the right to

counsel at the time of her hearing, Lopez has not demonstrated that this error caused her any prejudice that could render the proceeding "fundamentally unfair" under 8 U.S.C. § 1326(d)(3).

The applicable regulations concerning Lopez's right to counsel at the time of her hearing required that the IJ, among other things, "(1) [a]dvise [her] of . . . her right to representation, at no expense to the government, by counsel of . . . her own choice authorized to practice in the proceedings and require [her] to state then and there whether . . . she desires representation; (2) [a]dvise [her] of the availability of free legal services . . . [and] (3) [a]scertain that [she] has received a list of such programs, and a copy of appeal rights[.]" 8 C.F.R. § 240.10(a)(1)–(3) (2001).

At the hearing, the IJ advised Lopez of her right to representation and ensured that she stated on the record whether she desired representation. As previously noted, during her first appearance, on October 17, 2002, the following exchange took place:

> IJ: The purpose of this hearing is to decide if you should be deported from the United States. In this hearing you have the right to an attorney to represent you at your own expense. I can give you a list of organizations that may be willing to represent you at little or no cost, but I don't believe they come to Danbury. Do you want some time to get a lawyer or do you want to speak for yourself today?
>
> Lopez: I want time.
>
> IJ: Okay. Ma'am, I'm going to reset your case to December 12th 2002 at nine o'clock.

Def's Mem. Ex. E at 1. At the second hearing, on December 12, 2002, the IJ followed up with Lopez regarding her representation:

> IJ: Ok, um, I set your case over to get a lawyer. Have you found a lawyer?
>
> Lopez: No, I did not ask for one because everyone which I consulted with said or, that all of that would depend on the judge – you don't have any possibilities.
>
> IJ: OK, you understand I need to start your hearing now?
>
> Lopez: Yes, sir.

10

It may indeed have been better practice, as Lopez argues, for the IJ to have hewed more closely to the scripted colloquy contained in the Immigration Judge's Benchbook. Nonetheless, the above exchanges reflect that Lopez understood that she was waiving her right to proceed with counsel. *See Hidalgo-Disla v. I.N.S.*, 52 F.3d 444, 445 (2d Cir. 1995) (finding that the defendant knowingly and voluntarily waived his right to counsel when he appeared at his third hearing without counsel, after the IJ informed him at two prior hearings that he had a right to counsel); *United States v. Hanson*, No. 15 CR 437(RRM)(RML), 2016 WL 11265650, at *7 (E.D.N.Y. Dec. 12, 2016) (finding defendant knowingly and intelligently waived right to counsel where IJ advised defendant to obtain a lawyer at defendant's first hearing and where defendant explained at his second hearing why he did not obtain one), *report and recommendation adopted*, No. 15 CR 437(RRM) (RML), 2017 WL 1040403 (E.D.N.Y. Mar. 17, 2017). Contrary to Lopez's contention, the fact that the IJ did not follow the suggested colloquy in the Immigration Judge's Benchbook does not compel a finding that she did not knowingly and voluntarily waive her right to counsel. *See Hanson*, 2017 WL 1040403, at *1 n.1 (concluding that where, as here, the defendant had not "proffered any case law . . . that requires an IJ to follow the Benchbook script" the failure of an IJ to do so was "not a *per se* violation of his due process rights").

Although Lopez does not address the IJ's compliance with 8 C.F.R. § 240.10(a)(2)–(3), the Court nonetheless notes that it appears that the IJ did not fully comply with these regulations. Instead of informing Lopez about the availability of free legal services "in the district where the removal hearing [wa]s held," for example, the IJ simply noted that he *could* give Lopez a list of organizations providing free legal services but that he didn't "believe they come to Danbury." *See* 8 C.F.R. § 240.10(a)(2); Def's Mem. Ex. E at 1. The Second Circuit has held that the failure of an IJ to adhere to the provisions within 8 C.F.R. § 240.10, even without a showing of prejudice, is

grounds for remand of a removal proceeding when reviewing a challenge to the removal order on direct appeal from the Board of Immigration Appeals. *See Picca v. Mukasey*, 512 F.3d 75 (2d Cir. 2008). When considering a collateral attack on a deportation order, however, in the context of §1326(d), a showing of prejudice is required. *See Perez*, 330 F.3d at 104. Lopez argues that she was prejudiced because, she maintains, counsel may have been able to obtain voluntary departure on her behalf. The Court rejects that argument, however, having found that voluntary departure was not available to Lopez because of her aggravated felony conviction. Accordingly, Lopez has not established that the removal proceeding was fundamentally unfair under 8 U.S.C. § 1326(d).

Because Lopez cannot establish that the removal order underlying the reentry charge against her was fundamentally unfair, the Court will not address her arguments that her failure to exhaust her administrative remedies is excused and that she was deprived of the opportunity for judicial review.[3]

---

[3] In a letter Lopez submitted to the Court after briefing on her motion was complete, *see* Dkt. 17, Lopez cites *Padilla v. Kentucky*, 559 U.S. 356 (2010), and *Dimaya v. Lynch*, 803 F.3d 1110 (9th Cir. 2015), *aff'd sub. nom. Sessions v. Dimaya*, 138 S. Ct. 1204 (2018). Neither of these cases affects the outcome of this motion. Her reference to *Padilla* could be construed as an argument that her guilty plea to the drug charge for which she was convicted in 2001 was invalid, presumably on grounds that she had not been informed about the possibility of deportation when she pled guilty, as *Padilla* requires, and that the subsequent removal order predicated on that conviction was therefore also invalid. Because *Padilla* does not apply retroactively, however, the Court is foreclosed from considering such an argument. *See Chaidez v. U.S.*, 133 S. Ct. 1103 (2013). With respect to *Dimaya*, the Supreme Court held in that case that the residual clause of the federal criminal code's definition of "crime of violence," as incorporated into one of the INA's definitions of an aggravated felony, 8 U.S.C. § 1101(a)(43)(F), was unconstitutional because it was impermissibly vague. That provision does not apply here. Lopez's 2001 conviction is classified as an aggravated felony because it involved "illicit trafficking in a controlled substance," under 8 U.S.C. § 1101(a)(43)(B), not because it was a crime of violence pursuant to § 1101(a)(43)(F).

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is DENIED. The Clerk of Court is directed to terminate the motion pending at Dkt. 6.

SO ORDERED.

Dated: June 10, 2019
       New York, New York

Ronnie Abrams
United States District Judge